# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## 2016-1277

---

TOMTOM, INC.

*Plaintiff/Counterclaim Defendant – Appellee,*

v.

MICHAEL ADOLPH,

*Defendant/Counterclaimant – Appellant.*

---

Appeal from United States District Court for the Eastern District of Virginia in Case No. 1:12-cv-528-TSE/IDD, Hon. T.S. Ellis, III

---

## BRIEF OF APPELLEE TOMTOM, INC.

---

James H. Wallace, Jr.
Brian H. Pandya
Karin A. Hessler
Wesley E. Weeks
**WILEY REIN LLP**
1776 K Street NW
Washington, DC 20006
(202) 719-7000

*Counsel for Appellee TomTom, Inc.*

March 17, 2016

# CERTIFICATE OF INTEREST

Counsel for Appellees TomTom, Inc. certifies the following:

1.     The full name of every party or amicus represented by me is:

TomTom, Inc.

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

N/A

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

TomTom, Inc. is a subsidiary of TomTom International BV, which is a subsidiary of TomTom NV, a publicly traded Dutch company.  TomTom North America, Inc. is a subsidiary of TomTom Global Content BV, which is also a subsidiary of TomTom NV.

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are (*no longer affiliated with Wiley Rein*):

James H. Wallace, Jr.             Karyn K. Ablin*
Brian H. Pandya                   Karin A. Hessler
Attison L. Barnes, III            Adrienne (Johnson) Kosak
Gregory R. Lyons*                 Ryan M. Corbett*
Matthew J. Dowd*                  Paul Kim*
Kevin P. Anderson                 Wesley Weeks
                                  A. Claire Frezza*

WILEY REIN LLP
1776 K Street NW
Washington, DC 20006
(202) 719-7000

Date: <u>March 17, 2016</u>          <u>*/s/Brian H. Pandya.*</u>
                                  Signature of counsel

                                  <u>Brian H. Pandya</u>
                                  Printed name of counsel

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ................................................................i

STATEMENT OF RELATED CASES ................................................ vii

PRELIMINARY STATEMENT ..........................................................1

STATEMENT OF THE ISSUES ON APPEAL ....................................4

STATEMENT OF THE CASE, SETTING OUT THE RELEVANT FACTS .........5

I.    Overview of U.S. Patent No. 6,356,836 .........................................5

    A.    The Asserted Claim Requires Generating "Traveled Distance Data" To Then Select "Section Data" .............................................6

    B.    The Critical "Section Data" Limitation Was the Subject of Extensive Prosecution History ...............................................9

II.   TomTom's Accused Infringing Software.......................................12

III.  The District Court Proceedings .....................................................14

    A.    Claim Construction: Dr. Adolph First Declined to Propose Claim Constructions and Then Did Not Appeal the District Court's Construction of the "Selecting" Clause...............................................15

    B.    Summary Judgment: TomTom Renews Its Earlier Summary Judgment Motion as to the "Selecting" Step ....................................18

SUMMARY OF THE ARGUMENT ....................................................21

ARGUMENT ......................................................................................25

I.    STANDARD OF REVIEW .........................................................25

II.   Dr. Adolph Waived Challenging the Construction of the "Selecting" Clause By Not Raising That Issue In His Previous Appeal .....................................26

    A.    An Issue an Appellant Failed to Raise In an Earlier Appeal Is Waived In Any Later Appeals ...........................................26

# TABLE OF CONTENTS
## (*Continued*)

**Page**

B.    The "Selecting" Step Could Have Been Appealed Previously ........... 28

III.   The District Court Properly Construed the "Selecting" Step ....................... 32

    A.    The Disputed "Selecting" Step Required Construction and Must Be Construed In Light of the Specification ............................................. 33

    B.    The Claim Requires Selecting the Most Characteristic Nodes and Dropping Intermediate Points to Form Contiguous Sections ............. 35

        1.    The Claim Requires Selecting the Most Characteristic Nodes. 36

        2.    The Claim Requires Dropping Intermediate Nodes ................. 38

        3.    The Sections Must Be Connected Together ............................. 41

    C.    Dr. Adolph Disclaimed Broader Definitions During Prosecution ...... 42

IV.   The District Court Properly Granted Summary Judgment of Non-Infringement ................................................................................. 45

    A.    TomTom Devices Do Not Select Most Characteristic Nodes or Drop Intermediate Nodes to Form Contiguous Segments ........................... 46

        1.    TomTom Navigation Devices Do Not Select Most Characteristic Nodes ................................................. 47

        2.    Failing to Record Data In the First Instance Is Not Dropping Intermediate Nodes ................................................. 48

        3.    TomTom Navigation Devices Do Not Generate Contiguous Sections ................................................. 49

    B.    The Record Evidence Does Not Raise a Triable Issue of Fact ........... 50

    C.    Even Under Dr. Adolph's Broader Construction, The Second Step Is Not Performed. ................................................................... 54

CONCLUSION ................................................................................. 56

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*ACCO Brands, Inc. v. ABA Locks Manufacturer Co.*,
  501 F.3d 1307 (Fed. Cir. 2007) ...........................................................53

*Alice Corp. Pty. Ltd. v. CLS Bank International*,
  134 S. Ct. 2347 (2014).......................................................15, 18, 19

*Amazon.com, Inc. v. BarnesandNoble.com, Inc.*,
  239 F.3d 1343 (Fed. Cir. 2001) .........................................................55

*Art Midwest, Inc. v. Clapper*,
  805 F.3d 611 (5th Cir. 2015) .............................................................27

*Engel Industries, Inc. v. Lockformer Co.*,
  166 F.3d 1379 (Fed. Cir. 1999) .....................................................27, 30

*Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.*,
  No. 2015-1237, 2016 WL 766661 (Fed. Cir. Feb. 29, 2016)............................33

*ePlus, Inc. v. Lawson Software, Inc.*,
  700 F.3d 509 (Fed. Cir. 2012) ...........................................................53

*Fenner Investments, Ltd. v. Cellco Partnership*,
  778 F.3d 1320 (Fed. Cir. 2015) .........................................................42

*Fogel v. Chestnutt*,
  668 F.2d 100 (2d Cir. 1981) ..............................................................27

*Gemstar-TV Guide International, Inc. v. International Trade Commission*,
  383 F.3d 1352 (Fed. Cir. 2004) .........................................................43

*Gillespie v. Dywidag Systems, International, USA*,
  501 F.3d 1285 (Fed. Cir. 2007) .........................................................44

*Golden Bridge Technology, Inc. v. Nokia, Inc.*,
  527 F.3d 1318 (Fed. Cir. 2008) .........................................................25

*Interactive Gift Express, Inc. v. Compuserve Inc.*,
  256 F.3d 1323 (Fed. Cir. 2001) .........................................................32

# TABLE OF AUTHORITIES
## (*Continued*)

**Page(s)**

*Irdeto Access, Inc. v. Echostar Satellite Corp.*,
   383 F.3d 1295 (Fed. Cir. 2004) ................................................................35, 37

*Jang v. Boston Scientific Corp.*,
   532 F.3d 1330 (Fed. Cir. 2008) ........................................................................29

*K-2 Corp. v. Salomon S.A.*,
   191 F.3d 1356 (Fed. Cir. 1999) ........................................................................41

*Laitram Corp. v. NEC Corp.*,
   115 F.3d 947 (Fed. Cir. 1997) ..........................................................................30

*Lucent Technologies, Inc. v. Gateway, Inc.*,
   525 F.3d 1200 (Fed. Cir. 2008) ........................................................................45

*Markman v. Westview Instruments, Inc.*,
   52 F.3d 967 (Fed. Cir. 1995) (en banc) ..................................................17, 31, 46

*Microsoft Corp. v. Proxyconn, Inc.*,
   789 F.3d 1292 (Fed. Cir. 2015) ........................................................................35

*Munoz v. Imperial County*,
   667 F.2d 811 (9th Cir. 1982) ...........................................................................27

*MyMail, Ltd. v. America Online, Inc.*,
   476 F.3d 1372 (Fed. Cir. 2007) ........................................................................34

*Novo Industries, L.P. v. Micro Molds Corp.*,
   350 F.3d 1348 (Fed. Cir. 2003) ........................................................................45

*O2 Micro International Ltd. v. Beyond Innovation Technology Co.*,
   521 F.3d 1351 (Fed. Cir. 2008) ........................................................................46

*Omni Outdoor Advertising, Inc. v. Columbia Outdoor Advertising, Inc.*,
   974 F.2d 502 (4th Cir. 1992) ...........................................................................28

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ...............................................................34, 37, 39

# TABLE OF AUTHORITIES
## (*Continued*)

**Page(s)**

*Power Integrations, Inc. v. Fairchild Semiconductor International, Inc.*,
711 F.3d 1348 (Fed. Cir. 2013), *cert. denied*, 134 S. Ct. 900 (2014) ...............34

*Regents of University of Minnesota v. AGA Medical Corp.*,
717 F.3d 929 (Fed. Cir. 2013) ...........................................................................44

*Southwall Technologies, Inc. v. Cardinal IG Co.*,
54 F.3d 1570 (Fed. Cir. 1995) ...........................................................................42

*Sweat v. City of Fort Smith, Arkansas*,
265 F.3d 692 (8th Cir. 2001) ..............................................................................27

*Teva Pharmaceuticals. USA, Inc. v. Sandoz, Inc.*,
135 S. Ct. 831 (2015)..........................................................................................25

*TomTom, Inc. v. Michael Adolph*,
790 F.3d 1315 ...................................................................................2, 12, 25, 29

*United States v. Henry*,
472 F.3d 910 (D.C. Cir. 2007)............................................................................27

*United States v. Parker*,
101 F.3d 527 (7th Cir. 1996) ..............................................................................27

*Verizon Services Corp. v. Vonage Holdings Corp.*,
503 F.3d 1295 (Fed. Cir. 2007) ..........................................................................44

*VirnetX, Inc. v. Cisco Systems, Inc.*,
767 F.3d 1308 (Fed. Cir. 2014) ..........................................................................34

*White v. Dunbar*,
119 U.S. 47 (1886)..............................................................................................55

## RULES

Fed. R. Civ. P. 12(c)...............................................................................................18

Fed. R. Civ. P. 50(b) ..............................................................................................18

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, Appellee states that an appeal based on a stipulation of non-infringement following the district court's claim construction order was previously before this Court in *TomTom, Inc. v. Adolph*, Case No. 14-1699. The panel in that appeal consisted of Circuit Judges Wallach and Hughes and District Judge Fogel sitting by designation. On June 19, 2015, the panel issued a decision altering the claim constructions Dr. Adolph elected to appeal and accordingly vacated the underlying stipulation of non-infringement. *See* 790 F.3d 1315 (Fed. Cir. 2015) (Wallach, J.).

No other appeals in this case were previously before this or any other appellate court, and there are no other pending cases in this or any other court that will directly affect or be directly affected by this Court's decision in this appeal.

## PRELIMINARY STATEMENT

The district court properly granted summary judgment of non-infringement in favor of appellee TomTom, Inc. ("TomTom") and against appellant Michael Adolph ("Dr. Adolph").  In February 2014, the district court construed eight disputed claim terms found in the only asserted independent claim (claim 1) of U.S. Patent No. 6,356,836 ("the '836 patent").   Appx1-31.  TomTom promptly moved for summary judgment of non-infringement based on six of those claim constructions.  Appx1535-55.   Prevailing on any one of those would have been case dispositive.  Instead of facing summary judgment, Dr. Adolph stipulated to non-infringement and appealed five of the six constructions raised in TomTom's summary judgment motion.  Appx1683-90.

Dr. Adolph did not, however, appeal the construction of the key step of claim 1 ("generating and storing section data . . . by selecting, from the traveled distance data, nodes $P_j$ and $P_k$, which define contiguous sections $P_jP_k$"), which was construed to mean "selecting from the traveled distance data, the nodes that are most characteristic of a road segment and dropping the intermediate nodes of that segment, whereby the end of one section is the start of the next section."  Appx21-23, 31.  Dr. Adolph did not appeal that construction in 2014 even though TomTom had a pending summary judgment motion on that very basis.  That construction is

now the law of the case, as Dr. Adolph waived challenging that claim construction in subsequent appeals by failing to raise that ripe issue in his first appeal.

On remand, TomTom renewed its pending summary judgment motion as to the "selecting" step, and the district court granted summary judgment of non-infringement based on the undisputed factual record. The software found in TomTom navigation devices records trip data in one-second or five-second intervals (depending on the model of the device). *See TomTom, Inc. v. Michael Adolph*, 790 F.3d 1315, 1321 (discussing the "Cayman Data Format"). TomTom devices store these data points without regard to whether they are characteristic or redundant. There is thus no "selecting . . . the nodes that are most characteristic of a road segment" and no "dropping the intermediate nodes of that segment" as required by the claim construction. More fundamentally, the accused functionality simply does not resemble the claimed steps of first "generating and storing traveled distance data . . . *wherein the traveled distance data represents traveled sections by at least a series of nodes $P_i$*" and then "generating and storing section data . . . *by selecting, from the traveled distance data, nodes $P_j$ and $P_k$, which define contiguous sections $P_jP_k$.*"[1]

---

[1]  All emphases are added and all internal citations and quotations have been omitted except where noted otherwise.

Dr. Adolph's only infringement arguments relate to conditions when TomTom navigation devices fail to record Cayman data in the first instance—for example, when the vehicle containing the navigation device is no longer traveling or when the navigation device fails to obtain a valid GPS signal. When a vehicle is not moving, there is no stored "series of nodes" that "represent traveled sections" and thus no "section data" can be "selected" from "traveled distance data." Similarly, when a vehicle loses its signal, there is a break in the recorded data, and the end of one section is not the start of the next section. The recorded sections are therefore not "contiguous" as required by the claim and the claim construction. For all these reasons, the grant of summary judgment of non-infringement should be affirmed.

## STATEMENT OF THE ISSUES ON APPEAL

1.    When the district court construes multiple claim terms, the accused infringer moves for summary judgment of non-infringement based on those claim constructions, and the patentee enters into a stipulation of non-infringement to appeal some but not all the claim constructions, has the patentee waived any later challenges to those constructions it could have appealed but chose not to appeal earlier?

2.    Where a patent claim requires two specific steps be performed—first, "generating and storing traveled distance data . . . wherein the traveled distance data represent traveled sections by at least a series of nodes $P_i$," and second, "generating and storing section data . . . by selecting, from the traveled distance data, nodes $P_j$ and $P_k$, which define contiguous sections $P_jP_k$, to which at least their geographical starting point and end point are assigned"—and the patentee presented no evidence that the second step is performed, did the district court properly enter summary judgment of non-infringement?

### STATEMENT OF THE CASE, SETTING OUT THE RELEVENT FACTS

This appeal comes on the grant of summary judgment of non-infringement. Dr. Adolph asserted one independent claim, claim 1 of U.S. Patent No. 6,356,836, and then failed to produce any evidence that the accused TomTom navigation devices perform the second—and indeed, critical—step of the claimed method. Appx32 ("Dr. Adolph has not produced sufficient evidence to create a triable issue of fact on the question of infringement").

This claim step was one of the eight claim terms found in claim 1 that the district court construed in February 2014 and was one of the multiple bases on which TomTom moved for summary judgment of non-infringement in March 2014. Dr. Adolph elected not to appeal the construction of the "selecting" step when he stipulated to non-infringement to avoid a summary judgment ruling and appealed the other claim terms raised in TomTom's summary judgment motion. On remand, TomTom renewed its motion for summary judgment as to the "selecting" step, and the district court granted summary judgment.

### I.   OVERVIEW OF U.S. PATENT NO. 6,356,836

The '836 patent "relates to a method for generating and updating data for use in a destination-tracking system consisting of at least one mobile unit." Appx113 (1:6-8). The patent states at the time of its filing in 1998, "[n]avigational or destination tracking systems [had] recently been attracting significant attention."

*Id.* at 1:14-15.   Navigation systems that existed in 1998 were useful for "guiding a driver to a target destination by electronic aids." *Id*. at 1:17-18.   Some existing systems were even able to calculate the fastest routes to destinations by "taking into account additional specific road information such as reports of road works, accident reports, etc. transmitted by communications systems." *Id*. at 1:30-33.[2]

Although destination tracking systems were widespread by 1998, the '836 patent contended that such systems "all use a static database with regard to geographic data" and the "[u]pdating of data is always incomplete and prone to errors." Appx113-114 at 2:64, 3:21-22.   To overcome this problem, the '836 patent proposes "a method to generate appropriate data utilizable for a practical destination tracking system." Appx114 at 3:38-40.

## A.   The Asserted Claim Requires Generating "Traveled Distance Data" To Then Select "Section Data"

Claim 1 recites "a method of generating and updating data for use in a destination tracking system of at least one mobile unit." Appx121 (17:35-37).

---

[2]     Dr. Adolph argues that the navigation systems that existed at the time the '836 patent was filed "could not calculate the most efficient and fastest route to a destination," (Adolph Br. at 12), but the '836 patent describes at least three prior art systems that calculated fastest routes based on current and historical traffic conditions.  *See* Appx113 at 1:65-67 ("DE 40 08 460 A1 describes a method which takes into account the current traffic conditions when selecting a new route"); 2:7-11 (selecting "optimal [route] with regard to travel time and/or fuel consumption" by analyzing "collected and stored data on the time-dependent occurrence of traffic obstructions during at least one earlier information gathering trip"); 2:35-53 ("the momentary vehicle speed and its current position . . . are continuously determined by means of a [GPS] receiver. . . .The stored locations are part of the trip route data which are transmitted . . . to a traffic computer. . . .[T]he central computer can propose 'time optimal' routes to other road users.").

The patent claim defines what data must first be collected and stored as "traveled distance data" in order to then be "selected" as section data and proscribes the sequence in which that generation, storage, and selection must occur.

Claim 1 of the '836 patent is copied below:

A method for generating and updating data for use in a destination tracking system of at least one mobile unit comprising:

generating and storing traveled distance data in at least one storage device provided in said mobile unit at least at predetermined time intervals, wherein the traveled distance data represent traveled sections by at least a series of nodes $P_i$ and to each node $P_i$ geographical coordinates $x_i$ and $y_i$ are assigned;

generating and storing section data in the storage device provided in the mobile unit, said section data being generated by selecting, from the traveled distance data, nodes $P_j$ and $P_k$, which define contiguous sections $P_jP_k$, to which at least their geographical starting point and end point are assigned; and

generating a section data file from the section data and storing the section data file in the storage device provided in the mobile unit, said section data file being continuously supplemented and/or updated with section data newly generated by the mobile unit.

Appx121 (17:38-55).

Claim 1 thus requires the navigation device to first collect a series of points that comprise "travel distance data," *i.e.*, points collected "at predetermined time intervals . . . [that] represent traveled sections by at least a series of nodes $P_i$." *Id.* at 17:38-44. Once the "series of nodes" that "represent traveled sections" have been collected, this "traveled distance data" is analyzed to generate what the patent calls "section data." *Id.* According to the patent claim, section data is generated

by "selecting, from the traveled distance data" two nodes ("P$_j$ and P$_k$") within each section to then generate "contiguous sections P$_j$P$_k$." *Id.* at 17:46-47.

Importantly, these steps must be performed sequentially, because the claim requires section data to be selected from traveled distance data. This sequence is visually depicted in the following series of diagrams (Appx1949):

**Step 1: "Generating and storing traveled distance data . . . [that] represent traveled sections by at least a series of nodes"**



**Step 2: "Selecting, from the traveled distance data, nodes P$_j$P$_k$ which define contiguous sections" (left) to create "section data" (right)**



The patent specification similarly depicts how nodes that depict "traveled sections" are "selected" to create "section data." The patents teaches that "[a]fter completion of a trip or even during the trip, section data are generated from the traveled distance data . . . [by] compressing the traveled distance data by dropping individual points $P_i$ and choosing those points $P_j$ and $P_k$ . . . which are most characteristic in defining a section of the route." Appx117 (10:8-14).

This sequential approach of first recording "traveled sections" as "traveled distance data" and then "selecting" the most characteristic nodes of each section to create "section data" is how the patent specification distinguished the claimed invention over prior art, which recorded traveled sections but did not also generate what the patent dubs "section data." *See* Appx113 at 1:40-41 (prior art "method to record and store a route carried out for the first time"); 2:21-24 (prior art "method for recording the travel time of a vehicle between two given nodes"); 2:35-41 (prior art that "successively stores the momentary vehicle speed and its current position which are continuously determined by [GPS]. . . . [t]he stored locations are part of the trip route data").

**B.    The Critical "Section Data" Limitation Was the Subject of Extensive Prosecution History**

Despite the specification's numerous distinctions between the claimed invention and prior art, Dr. Adolph encountered significant resistance during

prosecution of the '836 patent.  The key portions of the prosecution history relevant to the "selecting" step are summarized below.

On October 27, 2000, claim 1 was rejected as anticipated by U.S. Patent No. 4,982,332 ("the Saito patent").  *See* Appx195-209, 2224-2231.  The patent examiner found that Saito "disclose[d] a road data generating method for adding new roads into a map database for use in an on-board navigation system" by recording "traveled distance data represent[ing] sections covered by at least a series of nodes" and then "select[ing] from the traveled distance data" the two nodes ("$P_j$ and $P_k$") "which define contiguous sections $P_jP_k$, to which at least their geographical starting and end points are assigned."  Appx201.

On February 28, 2001, Dr. Adolph unsuccessfully attempted to traverse this rejection, arguing that "Saito only stores data relating to the physical location of nodes and segments or roads connecting the nodes" while "[t]he present invention instead has the specific objective of generating and storing section data that include other relevant information in addition to the sole geographic location."  Appx224.  Dr. Adolph further emphasized that "section data" reflects "selected relevant information" from the larger body of collected travel data.  *See* Appx223 ("the present invention . . . can generate and store data identifying the geographic location of points or nodes [and] the length and other characteristics of the sections connecting the nodes . . . and generate a complete road map *with selected relevant*

*information* representing all of the sections traveled by the mobile unit over time.").  Less than a month later, on March 29, 2001, the examiner reaffirmed that claim 1 was anticipated by Saito, despite Dr. Adolph's arguments.  Appx234-35.

Accordingly, on July 31, 2001, Dr. Adolph made additional distinctions between his claimed invention and Saito.  As relevant to the disputed "selecting" claim limitation, Dr. Adolph argued that: "a major distinction between Saito and the present invention is that Saito only stores points with their coordinates while the present invention is aimed at generating and storing section data which consists of *more information than merely recording points* and their coordinates according to a predetermined selection criteria.  More specifically, Claim 1 of the present invention refers to section data as being generated by selecting from the traveled distance data, nodes $P_j$ and $P_k$ which define contiguous sections $P_jP_k$, to which at least their geographical starting point and end point are assigned.  Thus the claim specifically claims that in its simplest implementation it not only records geographic locations of points $P_j$ and $P_k$ but the fact that they are connected to each other, that there is a direction of travel from $P_j$ to $P_k$ and a traveled distanced.  Likewise, *additional sections are stored in a contiguous fashion in order to store a route connecting the initial starting point of the vehicle to the final destination*." Appx251-252.  Dr. Adolph underscored creating connected sections, arguing that

"map[ping] the <u>sections</u> of the route that mobile unit has covered" was a distinguishing feature of his invention.  Appx252 (underlining in original).

Dr. Adolph made similar arguments elsewhere in his July 31, 2001 office action response, arguing that another prior art reference cited by the examiner (W092/02891, "the Thad application" (Appx2232-2261)) also "only utilizes a GPS receiver to determine and store point coordinates according to predetermined criteria."  Appx256.  Unlike the claimed invention, Thad "does not generate or store any information relating to the *contiguous sections* connecting stored points" and "does not collect, process, and store the relational data between points in a manner conducive to the creation of a section data file."  Appx256-257.

The '836 patent was ultimately allowed only after Dr. Adolph made these arguments describing how the claimed sequential process of first creating traveled distance data and then selecting section data differs from prior art.[3]

## II.    TOMTOM'S ACCUSED INFRINGING SOFTWARE

The infringement allegations in this case relate to a data-recording capability found in the software of TomTom navigation devices.  The typical TomTom navigation device is a portable handheld unit mounted on the dashboard or

---

[3]    Dr. Adolph also made arguments concerning other claim limitations that are not at issue here.  For example, Dr. Adolph made a number of arguments regarding the preamble of claim 1.  *See TomTom*, 790 F.3d at 1325 ("there is a disclaimer that the system does not require an initial map database").

windshield of the user's automobile.  Each device contains a touchscreen display, GPS receiver, maps, and navigation software that allow the user to plan a route between two points and receive turn-by-turn directions.  (A user may also purchase the maps and navigation software as an "app" that runs on a smart phone).

The navigation device also records GPS trail data—if the user expressly consents to logging where the device has traveled—as part of a background process running on the device.  Dr. Adolph accuses this background process, called Cayman data recording, of infringing the asserted claims of the '836 patent.

To create Cayman data, the navigation device first records a starting latitude and longitude.  Then, in one-second or five-second intervals (depending on the device model), the device records the relative changes in position (called the delta or delta-delta value).  Decl. of William Deurwaarder (Appx2065-98), at ¶¶ 4-6.[4] The navigation device continues recording delta-delta values until the trip ends or the GPS signal is lost for an extended period of time.  *Id.* at ¶ 10.

TomTom navigation devices never "select" or "drop" the data points that make up a Cayman data trail (*i.e.,* the starting latitude/longitude, delta values, and delta-delta values).   If a TomTom navigation device loses its GPS signal for a

_____

[4]     A delta value measures the change, over one interval, between the first latitude/longitude position and second latitude/longitude and thus measures the velocity of the vehicle. A delta-delta value measures the rate of change in position and thus measures the acceleration of the vehicle. Thus, a vehicle driving on a highway at a constant 65 miles per hour would generate a string of delta-delta values of (0, 0), because the vehicle is driving at a steady rate.

temporary period of time (less than 10 one-second or five-second intervals), the device still records delta-delta values in the Cayman trail.  In this instance, delta-delta recordings are zero-zero until the signal is regained.  *Id*. at ¶¶ 8, 9, 13.

If the TomTom navigation device loses its GPS signal or the vehicle containing the device stops moving for an extended period of time (more than 10 one-second or five-second intervals), the device simply ceases recording Cayman data.  When the signal is restored or the vehicle begins moving again, the device creates a new Cayman data trail, beginning with new starting latitude and longitude and subsequent delta and delta-delta values.

Once collected, each Cayman data trail (*i.e*., the starting latitude/longitude, delta values, and delta-delta values) sits inertly on the TomTom navigation device.  A TomTom navigation device never uses the Cayman data trails sitting on the device for navigation.   If the user chooses, the data may be anonymously uploaded to TomTom's facilities in the Netherlands, where the data may be aggregated with other data.  *Id* at ¶15 .

## III.    THE DISTRICT COURT PROCEEDINGS

TomTom brought this case in 2012 as a declaratory judgment action after Dr. Adolph's company, AOT Systems GmbH, sued TomTom's German distributor for the alleged infringement of the European counterpart to the '836 patent.  The European litigation ended with German courts finding non-infringement on the

same basis as the district court here and finding claim 1 as issued invalid as anticipated by prior art. *See* Appx44-45 ("It is worth noting that in related German litigation . . . a three-judge panel arrived at essentially the same conclusion reached here."); *see also* Appx2102-2211 (translations of German rulings).

In November 2015, the district court granted summary judgment of non-infringement. The grant of summary judgment came after Dr. Adolph: (a) argued every disputed claim term should be given its plain and ordinary meaning and not construed, (b) stipulated to non-infringement as to certain terms after the district court entered its claim construction order but (c) chose not to appeal the "selecting" construction even though TomTom had a pending summary motion on that motion, and then (d) on remand, deferred an *Alice* challenge by "specifically argu[ing] that the 'selecting' clause is 'the most important and detailed part of the claim'" and "involves 'selecting specific data points from the collected data' by 'extracting the starting point and the ending point of the sections.'" Appx49 (quoting Appx411 (Sept. 25, 2015 Hrg. Tr. 17:19-25)). These proceedings and opinions are summarized below.

### A.    Claim Construction: Dr. Adolph First Declined to Propose Claim Constructions and Then Did Not Appeal the District Court's Construction of the "Selecting" Clause

The district court issued a claim construction order in February 2014, construing nine disputed claim terms found across the asserted independent and

dependent claims of the '836 patent.  Appx1-31.  One of the disputed terms was "selecting, from the traveled distance data nodes $P_j$ and $P_k$, which define contiguous sections $P_jP_k$."  Appx21-23.

TomTom proposed the term be construed to mean "selecting from the traveled distance data, the nodes that are most characteristic of a road segment and dropping the intermediate nodes of that segment, whereby the end of one section is the start of the next section." Appx23.   To supports its proposed construction, TomTom cited intrinsic evidence (the claim itself, the specification, and file history) and unrebutted extrinsic evidence (deposition testimony from Dr. Adolph's own technical experts).  Dr. Adolph argued no construction was necessary. The district court found "Dr. Adolph's argument that the phrase does not need to be construed . . . unpersuasive" and that "the intrinsic evidence points persuasively to the construction of the phrase argued by TomTom."  Appx22.

The district court specifically cited two pieces of intrinsic evidence in adopting TomTom's proposed construction.  First, the district court noted that the patent specification teaches that "section data are generated from the traveled distance data or route data stored in the trip storage unit [by] compressing the traveled distance data by dropping individual points . . . and choosing those points $P_j$ and $P_k$, which are most . . . characteristic in defining a section of the route." *Id.* (citing Appx117 (10:8-14)).   Second, the district court found that "the prosecution

history shows that claim 1 requires that the actual sections $P_j$ and $P_k$ are contiguous such that the end of one section is the start of the next section" because "Dr. Adolph argued during the prosecution that 'additional sections are stored in a contiguous fashion in order to store a route connecting the initial point of the vehicle to the final destination." Appx22 (citing Appx252).

Shortly after the district court issued its *Markman* ruling, TomTom moved for summary judgment of non-infringement based on the constructions of the preamble of claim 1, the terms "nodes" and "storage device," and the "selecting" step. Appx 1535-55. Dr. Adolph moved for reconsideration of the construction of the preamble and "node" but did not challenge the construction of the "selecting" step. Appx1556-76. After the district court denied Dr. Adolph's motion for reconsideration, he stipulated to non-infringement and appealed to this Court. Appx1683-1689 Dr. Adolph elected not to challenge the construction of the "selecting" term in either his motion for reconsideration, stipulation of non-infringement, or earlier appeal, even though one basis on which TomTom sought summary judgment of non-infringement was that its devices never performed the "selecting" step (and was one of the bases on which TomTom's German supplier prevailed over AOT in Europe in 2013, thus removing any doubt by 2014 that Dr. Adolph was aware of the significance of this claim element).

### B.    Summary Judgment: TomTom Renews Its Earlier Summary Judgment Motion as to the "Selecting" Step

After this Court remanded the case to the district court, TomTom renewed its motion for summary judgment of non-infringement as to the "selecting" step, reasserting what it has argued since the beginning of this case—because the accused Cayman data only consists of a starting latitude/longitude, a delta value, and a series of delta-delta values, without further processing or selection, TomTom navigation devices never perform the step of "selecting, from the traveled distance data nodes $P_j$ and $P_k$, which define contiguous sections $P_jP_k$."

On remand, TomTom also moved for judgment on the pleadings that in light of  the Supreme Court's intervening decision in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014), the claimed invention was drawn to the abstract idea of recording a route.  The district court elected to address patentability as a post-trial issue under Fed. R. Civ. P. 50(b) rather than as a pretrial motion under Fed. R. Civ. P. 12(c), but the arguments Dr. Adolph made on patentability issues placed him crosswise with his infringement position, as the district court recognized when granting summary judgment of non-infringement.  Appx49 ("It is worth noting, moreover, that if Dr. Adolph's construction is correct, there is good reason to doubt the validity of the '836 patent. . . . Dr. Adolph cannot have it both ways; the '836 patent cannot cover the selection of all characteristic nodes of a road section when doing so is convenient to survive summary judgment, but focus on 'specific'

nodes that define the starting and ending points of a road section when doing so is convenient to survive an *Alice* motion.").

The district court's summary judgment opinion addressed both the construction of the "selecting" step and the evidence Dr. Adolph proffered to try to create fact issues. With respect to claim construction, the district court rejected Dr. Adolph's argument "that certain other constructions that were neither appealed to nor addressed by the Federal Circuit must also change" on remand. Appx40. The district court reconfirmed its earlier construction of the "selecting" step, noting that "the specification contemplates that the method is designed to cull the total pool of nodes down to just 'nodes $P_j$ and $P_k$' for practical use." Appx44. Thus, "step two of Claim 1, by its plain and ordinary language and in light of the specificification, requires that those inconspicuous nodes $P_i$ that are not selected as 'nodes $P_j$ and $P_k$' should not become part of the section data." *Id. See also* Appx48 ("Dr. Adolph's proposed construction, which simply requires 'selecting . . . geographic locations $P_j$ and $P_k$' turns a blind eye to the specification and, in essence, erases from the claimed method the selection step.").

With respect to Dr. Adolph's infringement arguments, the district court found that "[t]he undisputed record facts show that TomTom's location tracking software, in the course of generating and storing trip data, stores more than just qualifying 'nodes $P_j$ and $P_k$'" and "[i]n light of the claim construction, this is

dispositive." Appx50. Although Dr. Adolph "tacit[ly] acknowledg[ed] that the record evidence does not support a finding of infringement of Claim 1 as construed," the district court still explained "why each piece of evidence on which Dr. Adolph relies is insufficient to create a triable issue of fact." *Id.*

Dr. Adolph's evidence of alleged infringement related to error conditions where the TomTom navigation devices cease recording data. Appx51. The district court found that, in each instance, a failure to record points is not the same as methodically selecting the nodes $P_j$ and $P_k$ defining each section of roadway, as required by the patent claim. *See, e.g.,* Appx53 ("[A]ny time the first node $P_i$ is discarded, the TomTom software fails to select a node that is 'most characteristic' of a road segment."); Appx55 ("By following an arbitrary selection criterion instead of methodically identifying for selection a conspicuous point most characteristic of a road segment, the TomTom software is not performing the second step of Claim 1"); Appx56-57 ("[T]o the extent the loss of a GPS signal results in 'selection' of a node $P_k$, the selection is either inconsistent with the claimed method or the result of an arbitrary selection procedure rather than the methodical approach claimed"); Appx57 ("In sum, Dr. Adolph's three cited examples . . . all fail in light of the applicable claim construction.").

## SUMMARY OF THE ARGUMENT

The district court correctly determined that TomTom devices do not perform the second step of the only asserted independent claim of the patent. That step requires "selecting, from the traveled distance data nodes $P_j$ and $P_k$, which define contiguous sections $P_jP_k$." The district court construed this to mean "selecting from the traveled distance data, the nodes that are most characteristic of a road segment and dropping the intermediate nodes of that segment, whereby the end of one section is the start of the next section." TomTom devices do not "select" or "drop" nodes. Instead, they record a continuous data trail. TomTom devices never select the points within the trail that are most characteristic of road segments as required by the patent claim and the district court's claim construction.

At the time of the first appeal, Dr. Adolph was on full notice of TomTom's position that it does not perform the "selecting step" of the claim. Yet Dr. Adolph chose not to appeal the whole construction, focusing on just the embedded term "node." Whatever his strategic reasons were for limiting his appeal to the construction of the term "node," the consequence of that choice is that he waived his chance to challenge the district court's construction of the selecting clause.

This Court should affirm the judgment below for three reasons:

<u>First</u>, Dr. Adolph waived his appeal of the district court's construction of the "selecting step" by choosing not to challenge that construction on his first appeal,

even though TomTom had a pending motion for summary judgment on that basis at the time Dr. Adolph stipulated to non-infringement and brought his first appeal. As he admits in his brief, "Dr. Adolph did not agree with the District Court's initial construction of the selecting clause. But in the first appeal, Dr. Adolph did not contest the District Court's full construction of the selecting clause, rather, he focused on its interpretation of the embedded term 'node' in the context of the '836 patent claims." *See* Adolph Br. at 38. Based on the established waiver principles discussed below, this Court should not entertain Dr. Adolph's waived claim construction arguments and should affirm the district court's construction of the "selecting" step as the law of the case.

Second, the district court correctly construed "selecting from the traveled distance data, nodes $P_j$ and $P_k$, which define contiguous sections $P_jP_k$" to mean "selecting from the traveled distance data, the nodes that are most characteristic of a road segment and dropping the intermediate nodes of that segment, whereby the end of one section is the start of the next section." This construction is consistent with the claim language, specification, and prosecution history.

The claims were drafted to require actively "selecting" characteristic nodes from the broader "series of nodes" that "represent traveled sections," *i.e.,* "traveled distance data." Appx121 (17:38-50). The purpose of the claimed invention is to isolate those points found within the larger body of traveled distance data that most

-22-

characterize "the <u>sections</u> of the route that the mobile unit has covered" while storing "additional sections . . . in a contiguous fashion in order to store a route connecting the initial starting point of the vehicle to the final destination." Appx252  (emphasis in original).  Dr. Adolph also repeatedly emphasized during prosecution that his claimed invention generates "more information than merely recording points and their coordinates according to a predetermined selection criteria."  *Id.*   The specification similarly teaches that "section data are generated from the traveled distance data . . . [by] choosing those points $P_j$ and $P_k$ which are most characteristic in defining a section of the route."  Appx117 (10:8-14).

The positions Dr. Adolph advances on this appeal seek to undo the representations he made in the specification and file history, as well as the representations he made to the district court earlier in the case on patentability. There, Dr. Adolph "specifically argued that the 'selecting' clause is '*the most important and detailed part of the claim*'" and "involves '*selecting specific data points from the collected data*' by '*extracting the starting point and the ending point of the sections*.'"  Appx49 (quoting Appx411).  Yet Dr. Adolph now seeks to reduce the selecting step to the simple recordation of data, by arguing that TomTom recording the starting and ending point (and every point in between) of a trip infringes claim 1.

Third, as the district court correctly determined, the TomTom accused products do not (i) select characteristic points, (ii) drop intermediate points, or (iii) store contiguous sections. Rather, the TomTom devices records all points traveled by the device as long as the device is moving and has a valid signal. This does not satisfy the second step of the claimed method. Summary judgment of non-infringement was therefore appropriate.

Dr. Adolph argues the district court should not have granted summary judgment, but he identifies no disputed facts that warrant disturbing the judgment below. Instead, Dr. Adolph notes that TomTom devices stop recording data when the vehicle is stationary or when the device loses signal for an extended period of time. Although Dr. Adolph uses words such as "selecting" and "dropping" to describe these steps, he never maps these activities to the claimed invention. Nor can he do so, as a condition where the navigation device ceases to record data when the device is not moving or without a signal does not resemble the claimed method of first "generating and storing traveled distance data . . . [that] represent traveled sections by at least a series of nodes $P_i$" and then "generating and storing section data . . . by *selecting*, from the traveled distance data, nodes $P_j$ and $P_k$ which define contiguous sections $P_jP_k$." The grant of summary judgment of non-infringement should be affirmed.

# ARGUMENT

## I.   STANDARD OF REVIEW

As this Court previously recognized, "when the district court reviews only evidence intrinsic to the patent . . . the judge's determination will amount solely to a determination of law, and [this Court] will review that construction *de novo*." *TomTom,* 790 F.3d at 1322 (citing *Teva Pharms. USA, Inc. v. Sandoz, Inc.,* 135 S. Ct. 831, 841 (2015)).  However, "in considering extrinsic evidence, [the Court will] review the subsidiary factual findings underlying the district court's claim construction for clear error."  *TomTom,* 790 F.3d at 1322.

With respect to this Court's review of the district court's grant of summary judgment of non-infringement, the district court's finding of no genuine disputed factual issues is reviewed *de novo*, but that review is not unbridled.  "Appellate courts review district court judgments; we do not find facts."  *Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1323 (Fed. Cir. 2008) ("We decline to determine what a prior art reference discloses, a fact finding.").  Further, when there are multiple or alternative bases for affirming the grant of summary judgment, the appellee must only prevail on one basis for affirmance.  *See id.* at 1320.

## II.    DR. ADOLPH WAIVED CHALLENGING THE CONSTUCTION OF THE "SELECTING" CLAUSE BY NOT RAISING THAT ISSUE IN HIS PREVIOUS APPEAL

Because Dr. Adolph chose not to appeal the construction of the "selecting" step when he appealed the other claim terms the district court construed at the same time, he is now precluded from challenging that construction in this second appeal.  There is no dispute this issue could have been raised earlier.  *See* Adolph Br. at 38 ("Dr. Adolph did not agree with the District Court's initial construction of the selecting clause. But in the first appeal, Dr. Adolph did not contest the District Court's full construction of the selecting clause, rather, he focused on its interpretation of the embedded term 'node' in the context of the '836 patent claims.").  This Court should limit this appeal to whether the district court properly granted summary judgment of non-infringement under the claim construction adopted by the district court, which Dr. Adolph consciously chose not to appeal.

### A.    An Issue an Appellant Failed to Raise in an Earlier Appeal Is Waived In Any Later Appeals

It is well-established that a "question that could have been but was not raised on one appeal cannot be resurrected on a later appeal to the same court in the same case." 18B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 4478.6 (2d ed. 2013).  This Court is "entitled to assume that an appellant has raised all issues it deems important against a judgment appealed from," and thus "[a]n issue that falls within the scope of the judgment appealed

from but is not raised by the appellant in its opening brief on appeal is necessarily waived." *Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 1999).

Underlying this waiver doctrine is the sound principle of judicial efficiency that parties may not litigate in piecemeal fashion. The rule against piecemeal appeals is not unique to patent law and is thoroughly established across the regional circuit courts.[5] As the Fourth Circuit explained, the "most rudimentary procedural efficiency demands that litigants present all available arguments to an appellate court on the first appeal," and that rule exists for good reason:

---

[5]    *See, e.g.*, *United States v. Henry*, 472 F.3d 910, 913 (D.C. Cir. 2007) (internal citations and quotation marks removed) ("It is well-settled that where an argument could have been raised on an initial appeal, it is inappropriate to consider that argument on a second appeal following remand. The widely-accepted bar promotes procedural efficiency and prevents the bizarre result that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost."); *Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir. 1981) ("It would be absurd that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost."); *Art Midwest, Inc. v. Clapper*, 805 F.3d 611, 614 (5th Cir. 2015); *United States v. Parker*, 101 F.3d 527, 528 (7th Cir. 1996) ("A party cannot use the accident of a remand to raise in a second appeal an issue that he could just as well have raised in the first appeal."); *Sweat v. City of Fort Smith, Arkansas*, 265 F.3d 692, 696 (8th Cir. 2001) ("The general rule is that, where an argument could have been raised on an initial appeal, it is inappropriate to consider that argument on a second appeal following remand."); *Munoz v. Imperial Cty.*, 667 F.2d 811, 817 (9th Cir. 1982) ("We need not and do not consider a new contention that could have been but was not raised on the prior appeal.").

> In addition, it is not fair for an adversary to have to defend the same lawsuit on appeal over and over. It would be absurd that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost.

*Omni Outdoor Advert., Inc. v. Columbia Outdoor Advert., Inc.*, 974 F.2d 502, 505

(4th Cir. 1992).

### B.    The "Selecting" Step Could Have Been Appealed Previously

Here, the issue Dr. Adolph raises on this appeal—the construction of the "selecting" clause—was ripe for review in his first appeal.  After the district court issued its claim construction decision in February 2014, TomTom moved for summary judgment.  In its opening summary judgment brief, TomTom specifically argued that its products could not infringe under the district court's construction of the selecting clause for the same reasons it pressed on remand:

> [T]he construction of "selecting from the traveled distance data, nodes $P_j$ and $P_k$, which define contiguous sections $P_jP_k$" requires "selecting from the traveled distance data, the nodes that are most characteristic of a road segment and dropping the intermediate nodes of that segment, whereby the end of one section is the start of the next section." Just as the German court found, the TomTom accused products do not: (i) select representative nodes; (ii) drop intermediate nodes; or (iii) store trip ending points to form contiguous sections.

Appx1542.

As this Court found when Dr. Adolph previously appealed claim terms that were in the district court's claim construction order but did not form a basis for the stipulated judgment of non-infringement, "the parties' summary judgment and reconsideration briefs (filed after the claim construction order) detail the effect the

district court's claim construction has on the issue of infringement.  Accordingly,

under *Jang*, this court will consider all of the district court's claim constructions."

*TomTom*, 790 F.3d at 1322 (citing *Jang v. Bos. Sci. Corp.*, 532 F.3d 1330, 1336

(Fed. Cir. 2008)).[6]

Because TomTom specifically argued that its products did not infringe under

the district court's construction of the "selecting" clause, this construction affected

the infringement analysis under *Jang* and was ripe for inclusion in Dr. Adolph's

first appeal.  By failing to address that claim construction in the first appeal, that

claim construction is now the law of the case.

Dr. Adolph also cannot use the tool of a stipulated judgment to pick issues to

appeal at that time and reserve other ripe issues for later.    Dr. Adolph

acknowledged the construction of the "selecting" step when he stipulated to non-

infringement in 2014 in order to bring his first appeal:

> TomTom argued in its summary judgment motion that its accused
> products do not infringe the '836 patent, at least in part, because the
> accused TomTom devices do not perform the step of "selecting from
> the traveled distance data, nodes $P_j$ and $P_k$, which define contiguous
> sections $P_jP_k$." TomTom's Mem. (Dkt. No. 201) at 11-12 (emphasis
> added). The Court construed "selecting from the traveled distance
> data, nodes $P_j$ and $P_k$, which define contiguous sections $P_jP_k$" to mean

---

[6]    This echoed the arguments Dr. Adolph made during his first appeal that
claim terms raised in TomTom's unresolved summary judgment motion were ripe
for review, even if those terms did not expressly form the basis for his stipulation
of non-infringement. *See* Appx2100. ("And the parties' summary judgment and
reconsideration briefs (filed after the claim construction order) detail the effect the
district court's claim construction has on the issue of infringement.").

"selecting from the traveled distance data, <u>the nodes that are most characteristic of a road segment</u> and dropping the intermediate nodes of that segment, whereby the end of one section is the start of the next section." Order (Dkt. No. 199) at 2 (emphasis added).    In his opposition to summary judgment of noninfringement, Adolph asserted that "TomTom's Cayman Data Format specification identifies conditions under which certain data points acquired using GPS will not be stored as section data in a 'GPS trail record' and are dropped, such as when the mobile unit loses satellite coverage and can't obtain valid GPS data readings (e.g., in a tunnel)." Adolph Opp'n (Dkt. No. 206) at 18.    **TomTom then asserted in its reply brief that this activity was outside the scope of the claim as construed**. TomTom Reply (Dkt. No. 215) at 12-13. This dispute over the scope and meaning of construed claim **terms** demonstrates one reason why the Court's construction of the term "node" actually affects the infringement analysis."

Appx1685-86 ¶ 8.

Dr. Adolph may have believed he was reserving the construction of "selecting" to appeal later, but that is immaterial to the waiver issue. The "scope of the issues presented to this court on appeal must be measured by the scope of the judgment appealed from, not by the arguments advanced by the appellant" to reach a final judgment. *Engel Indus., Inc.*, 166 F.3d at 1382. "To hold otherwise would allow appellants to present appeals in a piecemeal and repeated fashion, and would lead to the untenable result that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost." *Id* at 1382-83 . [7] Tellingly, the district court raised that exact

---

[7] That Dr. Adolph purported to reserve his ability to appeal other constructions only serves to underscore these concerns. Appx1688 ¶ 18. Such

concern in its summary judgment opinion. *See* Appx47, n.15 ("That the parties are now re-litigating claim construction after an initial claim construction appeal reflects that the initial appeal was incomplete or premature. . . . These circumstances counsel in favor of . . . ensuring that stipulations of dismissal cover *all* of the grounds for non-infringement warranted by the *Markman* determinations") (italics in original).

In his opening brief, Dr. Adolph offers a tepid explanation for his decision not to raise the "selecting" claim construction on the first appeal, stating that he "believed he possessed sufficient evidence to prove infringement" under the district court's construction of selecting and "focused on [the] interpretation of the embedded term 'node.'" Adolph Br. at 38-39. This explanation reveals that Dr. Adolph's decision not to appeal the selecting clause construction was deliberate. [8] Whatever his strategic or tactical reasons were for not appealing the "selecting" step in his first appeal, Dr. Adolph should not be permitted to revisit that decision

---

reservation language protects apellees' rights in later appeals, as "[a]ppellees do not select the issues to be appealed." *Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 954 (Fed. Cir. 1997).

[8]    Dr. Adolph's assent to the construction of "selecting" is further confirmed by the fact that he used that construction to argue that the construction of "node" was incorrect. *See* Appx2101. ("But a definition that incorporates dropping intermediate nodes is an admission that those nodes are the same as points, a position Adolph has maintained all along. That is, following the district court's logic, nodes *must be* 'characteristic of a road segment,' but simultaneously nodes *cannot be* 'characteristic of a road segment' because some of them are dropped. This is a direct contradiction and both cannot be true.").

in this appeal simply because he turned out to be wrong and could not prove infringement under that construction.[9]

## III.    THE DISTRICT COURT PROPERLY CONSTRUED THE "SELECTING" STEP

The district court properly resolved the dispute between the parties concerning the scope of the "selecting" clause and correctly construed the clause consistent with the claim language, specification, and prosecution history.  The intrinsic record confirms that "selecting, from the traveled distance data, nodes $P_j$ and $P_k$, which define contiguous sections $P_jP_k$, to which at least their geographical starting point and end point are assigned" means "selecting from the traveled distance data, the nodes that are most characteristic of a road segment and dropping the intermediate nodes of that segment, whereby the end of one section is the start of the next section."  That construction is further bolstered by the unrebutted extrinsic evidence TomTom submitted.

---

[9]    Moreover, if Dr. Adolph is allowed to challenge the construction of "selecting," his argument should be limited to the same position he advanced below.  Dr. Adolph's current proposed construction is broader than what he advanced below: "selecting at least two ~~connected~~ nodes [from the traveled distance data] that define a ~~continuous~~ road segment traveled by the mobile unit." Adolph Br. at 43-44, n.128.  *See Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1347 (Fed. Cir. 2001) ("[a party is] preclude[ed] . . . from changing its claim construction, that is, the scope of its claim construction, on appeal.").

## A.    The Disputed "Selecting" Step Required Construction and Must Be Construed In Light of the Specification

Dr. Adolph's assertion that the district court erred by construing the "selecting" limitation is at odds with this Court's precedent.  *See* Adolph Br. at 36 ("No construction of the 'selecting' clause of Claim 1 is needed . . . and the plain and ordinary meaning should control.").  "When the parties raise an actual dispute regarding [the] proper scope of the claims, the court, not the jury, must resolve that dispute."  *Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.* No. 2015-1237, 2016 WL 766661, at *4 (Fed. Cir. Feb. 29, 2016).  To leave "the scope of the claim unanswered" by "determining only that the terms should be given their plain and ordinary meaning" constitutes "legal error."  *Id.*  The district court thus correctly followed this Court's directives when it construed the "selecting" step.

Dr. Adolph's argument that the "selecting" step has a well understood plain and ordinary meaning given its "detailed" nature misses the mark.  *See* Adolph Br. at 36.  What is disputed here is the meaning of the entire "selecting" step to a person skilled in the art, *i.e.,* what does "generating and storing section data . . . by selecting, from the traveled distance data, nodes $P_j$ and $P_k$, which define contiguous sections $P_jP_k$, to which at least their geographic starting point and end point are assigned" mean in the specific context of the claims of the '836 patent?  Appx121 (17:45-50).

The "selecting" step uses idiosyncratic and technical terminology, such as "nodes $P_j$ and $P_k$" and "contiguous sections $P_jP_k$," and thus exists "without a meaning apart from the patent." *MyMail, Ltd. v. Am. Online, Inc.*, 476 F.3d 1372, 1376 (Fed. Cir. 2007) (construing coined "network service provider").  In such instances, the claim "must be defined by reference to the specification." *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1317 (Fed. Cir. 2014) ("[T]he word 'secure' does not have a plain and ordinary meaning in this context.").  *See also Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) ("patentees frequently use terms idiosyncratically, the court looks to those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean" including the specification and file history).

Dr. Adolph's arguments that the district court "improperly imported limitations into the selecting clause" by invoking "the specification and an argument made during prosecution" are similarly misguided.  Adolph Br. at 41.  Dr. Adolph seems to suggest that absent clear evidence of lexicography or disclaimer, the district court may not use the specification to interpret disputed claim terms.  To the contrary, while lexicography or disclaimer can result in disavowing the plain and ordinary meaning of a patent claim, the plain and ordinary meaning must still be discerned in the first instance, and the intrinsic record frames that inquiry.  *Power Integrations, Inc. v. Fairchild Semiconductor*

*Int'l, Inc.*, 711 F.3d 1348, 1362 (Fed. Cir. 2013) ("our inquiry . . . starts with the

intrinsic record, including the specification") *, cert. denied*, 134 S. Ct. 900 (2014);

*Irdeto Access, Inc. v. Echostar Satellite Corp.*, 383 F.3d 1295, 1300 (Fed. Cir.

2004) ("absent such an accepted meaning, we construe a claim term only as

broadly as provided for by the patent itself").[10] The district court properly relied on

the specification and file history in construing the selecting step, and its

construction should be left undisturbed.

### B.     The Claim Requires Selecting the Most Characteristic Nodes and Dropping Intermediate Points to Form Contiguous Sections

Each element of the district court's construction of the "selecting" step is

supported by the claim itself, the specification, prosecution history, and testimony

of Dr. Adolph's technical experts.  In contrast, Dr. Adolph's proposed plain and

ordinary meaning ("selecting at least two nodes [from the traveled distance data]

that define a continuous road segment traveled by the mobile unit") eliminates or

rewrites claim limitations.  For example, Dr. Adolph's construction replaces

"contiguous sections" (*i.e.,* multiple connected sections) with a "continuous road

---

[10]     To illustrate the unreasonableness of Dr. Adolph's position, TomTom respectfully submits that Dr. Adolph's claim construction approach would not even pass muster under a "broadest reasonable interpretation" standard.  *Microsoft Corp. v. Proxyconn, Inc.*, 789 F.3d 1292, 1298 (Fed. Cir. 2015) ("claims should always be read in light of the specification and teachings in the underlying patent" and "cannot be divorced from the specification and the record evidence").

segment" (*i.e.,* a single connected section of points).  His construction also blurs the line between section data and the traveled distance data from which section data is selected.  As explained below, the district court's construction should be affirmed.

### 1.    The Claim Requires Selecting the Most Characteristic Nodes

The disputed claim step recites "generating and storing section data . . . by selecting, from the traveled distance data, nodes $P_j$ and $P_k$, which define contiguous sections."  Appx121 (17:45-50).  The selection of nodes must therefore occur in the context of generating "section data" and accordingly requires more than just selecting two connected points.[11]  Indeed, recording two connected points is traveled distance data, *i.e.*, a "series of nodes" that "represent traveled sections."

The purpose of the claimed invention is to isolate those points found within the larger body of traveled distance data that most characterize "the sections of the route that the mobile unit has covered."  Appx252 (Resp. to Office Action) (emphasis in original).  As Dr. Adolph explained to the patent office, "[his] invention is aimed at generating and storing section data which consists of more information than merely recording points and their coordinates according to a

---

[11]    For this reason, this Court's prior construction of "nodes" does not impact the construction of the "selecting" step.  Contrary Dr. Adolph's arguments, (Adolph Br. at 2-3), it is irrelevant whether nodes are construed broadly or narrowly.  The point of the invention is "to cull the total pool of nodes down to just 'nodes $P_j$ and $P_k$' for practical use," as the district court recognized.  *See* Appx44.

predetermined selection criteria." *Id.  See also* Appx224 ("Saito only stores data relating to the physical location of nodes and segments or roads connecting the nodes.").

The patent specification similarly teaches, in unequivocal terms, that "section data are generated from the traveled distance data . . . [by] choosing those points $P_j$ and $P_k$ which are most characteristic in defining a section of the route." Appx117 (10:8-14).   Dr. Adolph dismisses this passage as exemplary, (Adolph Br. at 41), but the specification describes the process of selecting nodes to create section data in declarative terms, suggesting that Dr. Adolph intended this passage to define how nodes are selected to create section data in his claimed method. [12] *See, e.g.*, *Phillips*, 415 F.3d at 1316 ("[T]he specification may reveal a special definition given to a claim term by the patentee.").

This declarative description of selecting the "most characteristic" nodes to create section data stands in contrast with the permissive language used elsewhere in this portion of the specification.  *Compare* Appx117 at 10:8-14 ("section data *are generated . . . by dropping* individual points $P_i$ *and choosing* those points $P_j$ and $P_k$ which are most characteristic in defining a section of the route") *with 9:62-*

---

[12]    In addressing this passage, the district court acknowledged "there is reference to how a 'typical working sequence' of the *devices* might operate" but concluded "this language goes more to supporting the conclusion . . . that the method should not be understood as limited to an overly restrictive technological environment"  and that "[t]here is no indication that the method itself varies." Appx45, n.11 (emphasis in original).

63 ("The point records *can be* supplemented."). Similarly, the specification

provides "example[s]" of what qualifies as "characteristic route nodes $P_j$ and $P_k$,"

but nowhere does the specification say that "choosing those points $P_j$ and $P_k$ . . .

which are *most characteristic* in defining a section of the route" is optional. *Id*. at

10:8-19. The properly construed patent claim therefore require selecting the *most*

*characteristic nodes* from the "series of nodes" of each "traveled section"

comprising the "traveled distance data" in order to create "section data."[13]

### 2.    The Claim Requires Dropping Intermediate Nodes

The plain language of the patent claim and the specification further require

that non-selected nodes be dropped from the section data. The claim recites

"generating and storing traveled distance data . . . wherein the traveled distance

data represent traveled sections by at least a series of nodes $P_i$" and then reviewing

the traveled distance data to generate section data by "selecting . . . nodes $P_j$ and

$P_k$, which define contiguous sections $P_j P_k$." Appx121 (17:38-49). As the district

court explained, "$P_i$ refers to all nodes initially generated and stored as traveled

distance data" and $P_j$ and $P_k$ refer to those "nodes selected for storage as section

data," (Appx43), so it follows that those nodes $P_i$ "*not* selected for storage as

---

[13]    Nothing in this construction conflicts with the dependent claims. The construction requires affirmatively selecting for each segment of travel the two nodes from the larger body of nodes that define each segment. The dependent claims give specific examples of selecting the most characteristic nodes, consistent with the specification's examples of characteristic nodes. Appx117 (10:15-19).

section data" are "dropped." *Id.* at n.8 (emphasis in original). The specification confirms this understanding, declaring that "section data are generated . . . by dropping individual points $P_i$ and choosing those points $P_j$ and $P_k$ which are most characteristic." Appx117 (10:13-15).

Dr. Adolph attempts to sow confusion by quibbling over the meaning of "dropping" nodes. However, as the district court acknowledged, "[t]his term should not be understood as requiring the method to 'delete' these nodes. Rather, a node is dropped whenever it is not selected for storage as section data pursuant to Claim 1. . . . [S]uch [dropped] nodes could [still] be stored as traveled distance data pursuant to step one of Claim 1." Appx43, n.8.

Dr. Adolph also argues that intermediate points may be retained in the section data because section data "*includes at least* the geographical starting point and end point of a selected section." Adolph Br. at 37. However, this argument misreads the claim language. The claim recites "selecting, from the traveled distance data, *nodes $P_j$ and $P_k$*, which define contiguous sections $P_jP_k$, to which at least their starting point and end point are assigned." Appx121 (17:45-50). Thus, the claim specifically requires selecting two nodes, "$P_j$ and $P_k$," from the larger

body of nodes $P_i$.  Because only two nodes are selected, additional intermediate nodes cannot also be selected.[14]

Assigning a starting and ending point to each piece of section data is a separate requirement of the patent claim and does not impact the node selection. Indeed, the portion of the claim that the district court construed was "selecting, from the traveled distance data, *nodes $P_j$ and $P_k$*, which define contiguous sections $P_jP_k$." *See* Appx21-23, 31.  The "at least" clause is a separate part of the claim and not impacted by the claim construction.

The "at least" language merely means that other additional information, such as the additional types of information reflected in the dependent claims (such as claims 2, 24, 29, and 34) and discussed in the specification (including time, days, and events, *see* Appx117-118 (9:62-11:9)), may also be assigned to the section data, in addition to the starting and ending point.  The prosecution history confirms that additional information can be associated with section data, but section data always includes *at least the starting and ending point* so to direction of travel can

---

[14]    Dr. Adolph's position is contradicted by the testimony of his own technical expert, who testified that he understood the selecting step requires the device to "downselect" only "a subset of the traveled distance data" to form section data. Appx2218 (51:12-52:5) ("Q. Would the selecting of nodes in claim 1 to form section data, would that include selecting every node from the traveled distance data?. . . [A.] So I don't think that was an argument that Dr. -- or Mr. Andrews put forward. And I think in -- so just to have an opinion here, in general, I would say that no, you would downselect the traveled distance data to form the section data in general.  Q. Could you explain what you mean by downselect? A. Yeah. You -- just the selection. So you select a subset of the traveled distance data to form the section data.").

be determined, something that Dr. Adolph contended prior art was "not capable" of doing.  *See* Appx253.  *See also* Appx224 ("The present invention . . . has the specific objective of generating and storing section data that include other relevant information."); Appx252 ("Storing the sequence in which the points are traveled with the corresponding section data is essential in the case of one-way roads.").

### 3.     The Sections Must Be Connected Together

The patent claim further requires selecting nodes to generate "contiguous sections $P_jP_k$."  Notably, the claim does not recite generating one contiguous *section* in the singular, nor does it recite a *continuous* section.  Dr. Adolph may now prefer such language, but claim construction is not an occasion to rewrite claims.  *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1364 (Fed. Cir. 1999) ("[T]he applicant chose to add the term 'permanently' to the claims in order to achieve this result.  That the applicant could possibly have added terms other than 'permanently' to create a patentable distinction with the asserted prior art is simply irrelevant to our claim construction task.").

The claim specifically speaks of *contiguous sections* in the plural, confirming that multiple sections $P_jP_k$ are generated and that the sections are interconnected such that the end of one section is the start of the next section.  As Dr. Adolph explained during prosecution, "additional sections are stored in a contiguous fashion in order to store a route connecting the initial starting point of

the vehicle to the final destination." Appx252. Thus, although Dr. Adolph is

correct that nodes $P_j$ and $P_k$ are connected, the patent is concerned with creating

*contiguous sections*, not just creating a *continuous section*. *See, e.g.*, Appx117

(10:19-21) ("The *sections* $P_jP_k$ calculated from the route nodes. . . .").[15]

### C.    Dr. Adolph Disclaimed Broader Definitions During Prosecution

The prosecution history both confirms the teachings of the specification and

provides an independent basis for affirming the district court's claim construction.

The "prosecution history limits the interpretation of claim terms so as to exclude

any interpretation that was disclaimed during prosecution." *Southwall Techs., Inc.*

*v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995); *see also Fenner Invs.,*

*Ltd. v. Cellco P'ship*, 778 F.3d 1320, 1323 (Fed. Cir. 2015) ("Any explanation,

elaboration, or qualification presented by the inventor during patent examination is

relevant, for the role of claim construction is to capture the scope of the actual

invention that is disclosed, described, and patented"). In particular, where an

applicant disclaims scope to distinguish prior art, his arguments will limit the scope

---

[15]    The district court's understanding of "contiguous sections" is consistent with how Dr. Adolph's own technical expert understood the claim term. His expert admitted during deposition that "an example of something which is not contiguous is I turn my device on when I leave the office here and I arrive at my house and turn it off. And then I do not turn it on until I arrive in D.C., tomorrow and *then those two sections would not be contiguous in time or in space*." Appx2222 (39:10-16).

of the claims.  *See, e.g.*, *Gemstar-TV Guide Int'l, Inc. v. Int'l Trade Comm'n*, 383 F.3d 1352, 1377 (Fed. Cir. 2004).

Dr. Adolph narrowed the scope of the claimed invention on multiple occasions throughout prosecution to attempt to overcome prior art rejections:

First, Dr. Adolph repeatedly confirmed that "selecting" clause required more than storing points with their coordinates.  For example, in response to a rejection over the Saito patent, Dr. Adolph argued that "a major distinction between Saito and the present invention is that Saito only stores points with their coordinates while the present invention is aimed at generating and storing section data which consists of more information than merely recording points and their coordinates according to a predetermined selection criteria."  Appx251-252.

Second, Dr. Adolph repeatedly argued that the claimed *sections*—not the nodes—must be contiguous.  In response to the same rejection over the Saito patent, Dr. Adolph unambiguously represented that "Claim 1 of the present invention refers to section data as being generated by selecting from the traveled distance data, nodes $P_j$ and $P_k$ which define contiguous sections $P_jP_k$, to which at least their geographical starting point and end point are assigned.  Thus[,] the claim specifically claims that in its simplest implementation it not only records geographic locations of points $P_j$ and $P_k$ but the fact that they are connected to each other, that there is a direction of travel from $P_j$ to $P_k$ and a traveled distanced.

Likewise, additional sections are stored in a contiguous fashion in order to store a route connecting the initial starting point of the vehicle to the final destination." Appx251-252.

Similarly, to distinguish the Thad reference, Dr. Adolph represented that "Thad only utilizes a GPS receiver to determine and store point coordinates according to a predetermined criteria," but "does not generate or store any information relating to the contiguous sections connecting stored points nor does it store the time information necessary to travel between contiguous points like the present invention." Appx 256-257. This Court has repeatedly found that the usage of the phrase "present invention" "limits the scope of the invention." *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007); *see also, e.g.*, *Regents of Univ. of Minn. v. AGA Med. Corp.*, 717 F.3d 929, 936 (Fed. Cir. 2013).

These prosecution history excerpts clearly show that the claimed "selecting" clause is not "merely recording points and their coordinates," (Appx252), as TomTom does in the context of the accused products. Nor does the "selecting" clause encompass the generation of non-contiguous sections that are not "connected to each other." Appx252. Dr. Adolph cannot renege on his bargain with the Patent Office and the public by recapturing the very prior art that he purportedly distinguished. *See Gillespie v. Dywidag Sys., Int'l, USA*, 501 F.3d

1285, 1291 (Fed. Cir. 2007) ("The public notice function of a patent and its prosecution history requires that a patentee be held to what he declares during the prosecution of his patent").

This Court can readily reject Dr. Adolph's arguments against this compelling prosecution history. Dr. Adolph asserts that requiring sections to be connected is "nonsensical" and "inconsistent with real world situations." Adolph Br. at 46. Setting aside the lack of relevance of Dr. Adolph's argument to claim construction, this Court cannot re-draft claims to cure drafting errors or make them operable. *See, e.g.*, *Lucent Techs., Inc. v. Gateway, Inc.*, 525 F.3d 1200, 1215 (Fed. Cir. 2008) ("[C]ourts may not redraft claims to cure a drafting error made by the patentee, whether to make them operable or to sustain their validity."); *Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1357 (Fed. Cir. 2003) (refusing to allow district court to correct substantive errors in patent). But that is precisely what Dr. Adolph seeks. Dr. Adolph chose to claim "contiguous sections" and then relied on that feature to distinguish his invention over prior art. Because the district court's claim construction correctly gives effect to Dr. Adolph's repeated disclaimers, it should be affirmed.

## IV.  THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT OF NON-INFRINGEMENT

Although Dr. Adolph argues the district court impermissibly granted summary judgment, (*see* Adolph Br. at 47-61), he identifies no disputed facts that

warrant disturbing the grant of summary judgment.  To the contrary, Dr. Adolph's only arguments relate to the requirements of the second step of claim 1 of the '836 patent.  But claim interpretation is a question of law.  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) ("claim construction is a matter of law") (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc).  The district court correctly concluded that when the undisputed factual record is applied to the patent claim, TomTom navigation devices do not perform the claimed method.

### A.    TomTom Devices Do Not Select Most Characteristic Nodes or Drop Intermediate Nodes to Form Contiguous Segments

TomTom devices do not perform the step of "selecting, from the traveled distance data, nodes $P_j$ and $P_k$, which define contiguous sections $P_jP_k$" because none of the three requirements of the properly construed claim is met.  The construed claim requires "[i] selecting from the traveled distance data, the nodes that are most characteristic of a road segment and [ii] dropping the intermediate nodes of that segment, [iii] whereby the end of one section is the start of the next section."  Even if two elements of this claim construction are altered, that is not enough to reverse the grant of summary judgment, as one element is still missing.

TomTom navigation devices only record their starting location and then record their relative change in position (the delta value) or rate of change in position (called the delta-delta values) until the trip ends or until the signal is lost

or the navigation device is stationary for an extended period of time.   In contrast, for this claim element to be infringed, a device needs to first collect a series of points that comprise "travel distance data," *i.e.,* points collected "at predetermined time intervals . . . [that] represent traveled sections by at least a series of nodes $P_i$." Appx121 (17:38-44).   The series of points that make up the traveled distance data then need to be evaluated to first determine which points are most characteristic of a road segment.   Then, the intermediate points between the start and end of the road segment need to be dropped.   Further, to accurately model the roadway, the end of one segment must be contiguous with the start of the next segment.   The accused TomTom navigation devices simply do not resemble the claimed invention.

### 1.    TomTom Navigation Devices Do Not Select Most Characteristic Nodes

Dr. Adolph argues that when the navigation device "obtains a starting GPS location value, and then stores that starting location value in the form of latitude and longitude at the beginning of a Cayman trip record," that "starting location value corresponds directly to the first node $P_j$ of a contiguous segment of section data." Adolph Br. at 51-52.   Dr. Adolph similarly argues that when the navigation devices store subsequent points (as delta or delta-delta values), "[t]his too is node selection because it is a selection, followed by calculation and storage, of geographical location values obtained from GPS readings." *Id*. at 52.   This

infringement theory is a tautology.  Under Dr. Adolph's argument, any point that is recorded has been "selected."

Dr. Adolph's infringement argument is disconnected from the claim language and the requirements of the claim construction.  The patent claim requires more than just recording data points, as every device that has recorded a trip records the starting point of that trip and then records subsequent points.  Indeed, claim 1 claims creating "section data" by "selecting, from traveled distance data, nodes $P_j$ and $P_k$, which define contiguous sections $P_jP_k$."  Traveled distance data is, in turn, "a series of nodes" that "represent traveled sections."  Dr. Adolph identifies no processes in the TomTom devices where "a series of nodes" that "represent traveled sections" are first stored, and the "most characteristic" nodes of each section are then selected from the series of nodes for subsequent storage as section data.  For this reason, claim 1 is not infringed.

2.    <u>Failing to Record Data In the First Instance Is Not Dropping Intermediate Nodes</u>

Dr. Adolph similarly argues that "TomTom's accused products drop non-characteristic or intermediate points when selecting nodes for possible storage as section data," (Adolph Br. at 57), such as when the devices fails to obtain two consecutive valid signals at the start of a trip or when the vehicle not moving for an extended period of time.  *Id*. at 55-56.  However, nodes must dropped in the context of the claimed sequence of "generating and storing traveled distance data"

and "generating and storing section data . . . from the traveled distance data."
Adolph Br. at 38.

As Dr. Adolph acknowledges, "if [the navigation device] is stationary for a sufficient length of time," the device will "close the current Cayman data record." Adolph Br. at 56.  Thus, the points that are not recorded are not the intermediate nodes within a segment; rather, they are points between two segments.   Thus, even if this constitutes "dropping" data, it is not "dropping the intermediate nodes of the segment" as required by the claim construction.

More fundamentally, if data is not recorded (whether it be due to the vehicle being stationary or some anomaly such as a lost GPS signal), there is no stored traveled distance data from which nodes can be selected and dropped to form traveled distance.  The processes Adolph describes above simply do not resemble the deliberate process of selecting "the nodes that are most characteristic of a road segment" and "dropping the intermediate nodes" as required by the claim language and the claim construction.  For these reasons, claim 1 is also not infringed.

### 3.    TomTom Navigation Devices Do Not Generate Contiguous Sections

The claim additionally requires generating "contiguous sections $P_jP_k$." Because the claim refers to *contiguous sections* in the plural, and not to a *continuous section* in the singular, the construed claim requires that "the end of one section [be] the start of the next section."   Appx31.  TomTom navigation devices

do not create contiguous *sections* of data. Rather, they record a single continuous string of points until recording ceases. Indeed, as Dr. Adolph previously represented to the district court, "[b]y definition, if there is a break in the location readings, such as if the GPS signal is lost in a tunnel or otherwise due to a loss of satellite coverage, the nodes before and after the break in the travelled distance data readings would not be contiguous." Appx1413.

### B.    The Record Evidence Does Not Raise a Triable Issue of Fact

Dr. Adolph presented no evidence showing that TomTom navigation devices first generate and store "a series of nodes $P_i$" comprising "traveled distance data", and then select from the stored traveled distance data those nodes, $P_j$ and $P_k$, that define each section of roadway. Those requirements are again depicted below:

**Step 1: "Generating and storing traveled distance data . . . [that] represent traveled sections by at least a series of nodes"**



**Step 2: "Selecting, from the traveled distance data, nodes $P_j$ and $P_k$ which define contiguous sections $P_jP_k$" (left) to create "section data" (right)**



In contrast to this two-step process required by the patent claim, the undisputed factual record shows that TomTom navigation devices never perform these steps. The Cayman data trail consists of starting latitude and longitude values, delta latitude and longitude values, and a string of delta-delta values. Data is never dropped from the Cayman data trail. In that regard, Cayman data recording is no different from prior art described in the patent specification. *E.g.,* Appx113 (2:34-41) ("the method and system described in [prior art] successively stores the momentary vehicle speed and its current position which are continuously determined by means of a receiver tracking signals from a navigation satellite system. . . . The stored locations are part of the trip route data.")

Dr. Adolph's argument that he "adduced facts, [that] when considered in the light most favorable to his position, support the conclusion that TomTom's accused products infringe Claim 1 at least some of the time," (Adolph Br. at 48),

ignores the claim language. The example Dr. Adolph provides in his brief (*id*. at

54-58) illustrates why TomTom navigation devices do not infringe. In Dr.

Adolph's example, the navigation device records a starting point ($P_1$) and then

records ten more points ($P_2$ through $P_{11}$) until recording ceases due to inactivity.

Nothing else happens. No points are subsequently "selected" to create section

data. The device simply records eleven points ($P_1$ through $P_{11}$) and closes the

Cayman data trial. It is not enough that, as Dr. Adolph argues, "[n]odes $P_1$ and $P_2$

are both most characteristic because they represent starting and stopping points of

a road segment." *Id*. at 55. The claim requires for each section of data an

affirmative selection of two nodes, the starting node $P_j$ and ending node $P_k$, that

define each section $P_jP_k$, not the serendipitous recording of a string of points that

have a start and end. Indeed, it would be hard to imagine a line that does not have

a start and end.

The rest of Dr. Adolph's example also fails to create a triable issue of fact.

As Dr. Adolph notes, a TomTom navigation device requires two valid GPS

readings to create a Cayman data trail. Adolph Br. at 56. The fact that one valid

point is not recorded as Cayman data if two valid points are not obtained in a row

is not "selecting" from traveled distance data two nodes, $P_j$ and $P_k$, and "dropping"

the remaining nodes $P_i$. It is simply failing to record data due to an error condition.

Likewise, failing to store data when the vehicle is stationary or without a valid

GPS signal does not perform the required steps of the patent of first generating and storing a series of nodes of $P_i$ as traveled distance data and then selecting nodes $P_j$ and $P_k$ to create section data. In these situations, there is no traveled distance data to select from, as "a series of nodes" that "represent traveled sections" are not stored in the first instance.

There is a separate reason why Dr. Adolph is not entitled to a reversal of summary judgment. Even if the above examples created a triable issue of fact, Dr. Adolph has presented no evidence that the claimed method was ever performed in the above manner. To prove infringement of a method claim, a patentee must present actual evidence of infringement, not mere capability of infringement. *See ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 521-22 (Fed. Cir. 2012) ("Indeed, every mention of the converting step in ePlus's brief refers to the *capability* of the accused system, not an actual act of infringement. . . . Because ePlus did not offer any evidence that showed or even suggested that anybody performed the converting data step, no reasonable jury could have concluded that claim 28 was infringed—either directly or indirectly.").[16] In that regard, Dr.

---

[16]    *Cf. ACCO Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007) ("In order to prove direct infringement, a patentee must either point to specific instances of direct infringement or show that the accused device necessarily infringes the patent in suit. . . . However, the record contains no evidence of actual users having operated the lock in an infringing manner. ACCO proffered no witness testimony of actual Belkin key lock users, or surveys of Belkin's customers, that would indicate that a user, aside from the expert retained for this particular litigation, directly infringed the '989 patent.").

Adolph's argument that the district court required him to prove infringement to create a triable issue of fact misses the mark.[17] Dr. Adolph came forward with no evidence with which a reasonable juror could find infringement, so the grant of summary judgment must stand.

### C.    Even Under Dr. Adolph's Broader Construction, The Second Step Is Not Performed.

Even if Dr. Adolph's proposed claim construction is adopted, there is still no triable issue of infringement.  Dr. Adolph proposes that the "selecting" step be construed to mean "selecting at least two nodes [from the traveled distance data] that define a continuous road segment traveled by the mobile unit." *See* Adolph Br. at 36.  Even as construed by Dr. Adolph, TomTom navigation devices do not perform this step.  As explained above, the TomTom navigation devices record all points as long as the device is moving and has a valid signal.  No selection is made from those points by the TomTom navigation device.  Dr. Adolph's proposed claim construction and infringement argument conflates passively recording data with affirmatively selecting data.  Furthermore, under Dr. Adolph's theories, the accused TomTom functionality is indistinguishable from the prior art discussed in the specification that recorded a string of data points.  Appx113 (1:48-51; 2:21-24;

---

[17]    Regardless, the district court applied the correct summary judgment standard by requiring Dr. Adolph to present evidence that created a triable issue of fact. *See* Appx32 ("Dr. Adolph has not produced evidence sufficient to create a triable issue of fact on the question of infringement.").

2:34-40).   Such arguments do not represent a viable reading of the patent claim and should be rejected.

Dr. Adolph's infringement theory runs contrary to the patent's description of prior art.  The patent specification describes as prior art systems that record data similar to the way TomTom navigation devices create Cayman data.  For example, the specification describes a prior art system that "successively stores the momentary vehicle speed and its current position which are continuously determined by means of a receiver tracking signals from a navigational satellite system, said receiver being located in a storage unit in each vehicle of a sampling fleet."  Appx113 (2:35-40); *see also* id. at 2:22-24 (describing as prior art "recording the travel time of a vehicle between two given nodes, and for transmitting said travel times to a computer designated as the master computer").

What the patentee deemed prior art when obtaining his patent cannot be later deemed infringing activity.  A patent claim may not be treated "like a nose of wax, which may be turned and twisted in any direction" to allege infringement.  *See White v. Dunbar*, 119 U.S. 47, 51 (1886); *see also Amazon.com, Inc. v. BarnesandNoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) ("A patent may not, like a 'nose of wax,' be twisted one way to avoid anticipation and another to find infringement.").

Dr. Adolph's infringement arguments are also contrary to the ruling of the district court in Germany in the prior litigation between Dr. Adolph's company and TomTom's distributor. The German district court considered identical claim limitations and found that the creation of Cayman data did not infringe the European counterpart to the '836 patent. The German court concluded that "it is uncontested that only the starting point and the delta and delta-delta values are stored in the trip log data file," and accordingly, "[t]here is no selecting from the travelled distance data of nodes $P_j$ and $P_k$ which define contiguous route sections $P_jP_k$ to which as data at least their geographical starting and end points are assigned" as required by the patent claim. Appx2207-08. *See also* Appx2209 ("there is in any case no selection of nodes $P_j$ and $P_k$ from the data in the trip log data file and that there is also no assignment of geographical starting and end points of route sections"). Dr. Adolph has given no compelling reason for this Court to rule differently.

## CONCLUSION

For the reasons set forth above, this Court should affirm the district court's entry of final judgment of non-infringement.

Dated: March 17, 2016

*/s/ Brian H. Pandya*
James H. Wallace, Jr.
Brian H. Pandya
Karin A. Hessler
Wesley E. Weeks
WILEY REIN LLP
1776 K Street NW
Washington, DC 20006
(202) 719-7000

*Attorneys for Appellee*
*TomTom, Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2016, the foregoing Brief of Appellee TomTom, Inc. was served via ECF on all counsel of record.

*/s/Brian H. Pandya*

Brian H. Pandya

Dated:  March 17, 2015

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).  The brief contains 13,659 words, excluding the parts of the brief exempted by rule.  This number was generated using the Microsoft Word "Word Count" feature.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).  The brief has been prepared using Microsoft Word in Times New Roman, a proportionally spaced typeface, and 14-point size font.


/s/ Brian H. Pandya

Brian H. Pandya